IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SANUM INVESTMENT LIMITED and LAO HOLDINGS, N.V., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civ. No. 16-320-SLR |
| SAN MARCO CAPITAL PARTNERS LLC and KELLY GASS, | ) ) ) ) | |
| Defendants. | ) ) | |

Michael F. Bonkowski, Esquire of Cole Schotz, P.C., Wilmington, Delaware. Counsel for Plaintiffs. Of counsel: Deborah Deitsch-Perez, Esquire and Kenneth N. Hickox, Jr., Esquire of Lackey Hershman, LLP, Dallas, Texas.

James D. Taylor, Esquire and Dawn Kurtz Crompton, Esquire of Saul Ewing LLP, Wilmington, Delaware. Counsel for Defendant. Of counsel: Kenneth J. Joyce, Esquire, Stacy M. Schwartz, Esquire, and Andrew B. Zelman, Esquire of Lewis Brisbois Bisgaard & Smith LLP, Fort Lauderdale, Florida.

**MEMORANDUM OPINION**

Dated: July _12_, 2017
Wilmington, Delaware

ROBINSON, Senior District Judge

## I. INTRODUCTION

Plaintiffs Sanum Investment Limited and Lao Holdings, N.V. (collectively, "plaintiffs") filed a complaint against San Marco Capital Partners LLC ("San Marco") and its sole member/manager Kelly Gass ("Gass," and collectively with San Marco, the "defendants"). (D.I. 1) The complaint alleges breach of fiduciary duty, breach of contract, and conversion. (Id. at ¶¶ 69-86) Defendants have asked the court to dismiss the complaint based on an arbitration clause in either one of two agreements or under the doctrine of *forum non conveniens*. (D.I. 12) The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The court finds that, under a theory of estoppel, plaintiffs are required to arbitrate this dispute pursuant to the arbitration clause in a Deed of Settlement (the "Deed") executed by plaintiffs and the government of Laos ("Laos"). Accordingly, the court does not reach defendants' other arguments, and its motion to dismiss is granted.

## II. BACKGROUND

Plaintiffs are 80% owners of a casino and 60% owners of two slot clubs (collectively, the "gaming assets"), all located in the Lao People's Democratic Republic. (D.I. 1 ¶ 14) Laos owns the remaining 20% of the casino and a company named ST Group Co., Ltd. owns the remaining 40% of the slot clubs. (Id.) In 2012, plaintiffs filed bilateral investment treaty arbitrations (the "BIT arbitrations") alleging that Laos had expropriated the gaming assets and otherwise violated plaintiffs' treaty rights. (Id. at ¶ 15) Plaintiffs and Laos settled the BIT arbitrations by executing the Deed dated June 15, 2014 and a side letter dated June 18, 2014. (Id. at ¶ 16)

The complaint alleges that section 13 of the Deed is "[a] key provision of the Deed" under which "the Gaming Assets would be sold to a third-party 'on a basis that will maximize Sale proceeds.'" (D.I. 1 ¶ 2 (quoting section 13)). According to the complaint, if the assets were not sold within a certain timeframe, section 12 of the Deed provided that the parties would "jointly consult to appoint a qualified neutral gaming operator to take over, manage, and sell the Gaming Assets."[1] (*Id.* at ¶ 18) Section 12 further provided that the operator "shall have a fiduciary duty to [plaintiffs] and Laos as interested parties in the Gaming Assets." (*Id.* (quoting section 12 of the Deed)) Finally, section 42 of the Deed states that it "shall be governed by and construed solely in accordance with the laws of New York." (*Id.* at ¶ 20) What the complaint does not mention is that section 42 also contains an arbitration clause. It states in pertinent part:

> Any dispute **arising out of or in connection with** this Deed ... shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre .... The seat of the arbitration shall be in Singapore.

(D.I. 13 at 5 (emphasis added))

On April 16, 2015, Laos entered into a Management and Sales and Marketing Contract (the "contract") with defendant San Marco. (D.I. 1 at ¶ 24) The contract was

---

[1] The court notes that the complaint is not quoting the exact language of section 12 in making this assertion. Section 12 states, in relevant part:

> If the Sale Deadline is missed, the Claimants and Laos shall have the right to appoint RMC or any other qualified gaming operator to: (i) step in and manage and operate the Gaming Assets ..., and (ii) complete the Sale.... If the Claimants and Laos have not agreed on who that operator shall be 30 days before the Sale Deadline, they shall submit the matter to the FT Committee for final decision such that the operator can take over by the Sale Deadline.

(D.I. 15 at 5) The arbitrator will need to decide whether section 12 means plaintiffs' joint consultation and approval was required at the time defendants were hired.

2

signed by defendant Gass as the president of San Marco. (*Id.*) The stated purpose of the contract was to have defendants "manage, control, market and sell the Gaming Assets as contemplated by Sections 12, 13 and 16 of the Deed." (*Id.* at ¶ 30) Laos did not consult with plaintiffs before hiring defendants to serve as the operator specified in the Deed. (*Id.* at ¶ 35) Plaintiffs claim if they had been consulted beforehand, they would not have approved of Laos awarding the contract to defendants. (D.I. 22 at 4)

According to the complaint, defendants, as operators of the gaming assets, failed to enforce or fulfill several provisions of the Deed, in breach of their fiduciary duties and the contract. (D.I. 1 at ¶¶ 70-80) Specifically, defendants failed to respond to plaintiffs' requests for information regarding sections 15, 21, and 25 of the Deed, which provide respectively for the establishment of an escrow account, the exporting of slot machines in storage, and the expansion and upgrade of an airport. (*Id.* at ¶¶ 38-40) Defendants also did not take action to prevent or reverse Laos' breach of sections 6 and 9 of the Deed. (*Id.* at ¶¶ 50, 53) Section 6 provided that a project development agreement ("PDA") related to the casino was restated and effective for fifty more years, but Laos terminated the PDA while "Gass was in charge" and "she did nothing." (*Id.* at ¶¶ 49-50) Section 9 of the Deed provided that all taxes on the gaming assets would be subject to a flat tax, but Laos imposed a tax set at a percentage of revenue, and "Gass failed to prevent or reverse this action." (*Id.* at ¶¶ 51-53) Finally, the complaint alleges that defendants have repeatedly acted or failed to act in a manner that will complete a sale of the gaming assets "on a basis that will maximizes the Sale proceeds," as required by section 13 of the Deed. (*Id.* at ¶ 54)

## III. STANDARD OF REVIEW

A defendant may move to dismiss in favor of arbitration pursuant to Rule 12(b)(6) if it is apparent on the face of the complaint and the documents relied upon therein that the plaintiff's claims are subject to an enforceable arbitration clause. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013). Under Rule 12(b)(6), the court accepts all factual allegations as true and construes the complaint in the light most favorable to plaintiff. *Id.* at 772. In addition, the court may consider only the complaint, exhibits attached to the complaint, matters of public record, and the documents on which plaintiff's claims are based. *Id.* The motion to dismiss should be denied in favor of limited discovery concerning the validity of the arbitration agreement if: (1) "the complaint and its supporting documents are unclear regarding the agreement to arbitrate;" or (2) plaintiff has responded to the motion to dismiss with "additional facts sufficient to place the agreement to arbitrate in issue." *Id.* at 774-76. "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

## IV. DISCUSSION

Generally, claims must go to arbitration if: (1) "there exists a valid agreement to arbitrate;" and (2) "the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Plaintiffs do not dispute that the Deed is a valid and enforceable contract. Indeed, their claims depend on this being true. Plaintiffs also do not dispute that the Deed contains a broad arbitration clause that would apply to its

4

claims.[2] The only issue is whether defendants, as nonsignatories to the Deed, can enforce the arbitration clause in that agreement against plaintiffs, who are signatories.

Generally, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) ("[A]rbitration 'is a matter of consent, not coercion.'" (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989))). Absent an express agreement to arbitrate, federal courts have recognized limited exceptions upon which a party may still compel arbitration. Relevant to this case, a signatory may be estopped from avoiding arbitration with a nonsignatory when: (1) "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed;" and (2) "the signatory and nonsignatory parties share a close relationship." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001).

A signatory-plaintiff's claims against a non-signatory defendant are intertwined with an agreement containing an arbitration clause when the claims "rely on the terms of

---

[2] Clauses requiring arbitration of any dispute "arising out of" the agreement, as the Deed here requires, are typically characterized as "broad." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (collecting cases); *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction"); *Compucom Sys., Inc. v. Getronics Fin. Holdings B.V.*, 635 F. Supp. 2d 371, 378 (D. Del. 2009) ("Broad arbitration provisions are generally defined as those that apply to any dispute arising from an agreement.").

the agreement or assume the existence of, arise out of, or relate directly to, the written agreement." *Booth v. BMO Harris Bank, N.A.*, 2014 WL 3952945, at *6 (E.D. Pa. Aug. 11, 2014) (*quoting Sarl v. A.M. Todd Co.*, 2008 WL 724607, at *9 (E.D. Pa. Mar. 18, 2008)); *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 334 (E.D. Pa. 2004) (finding that claims are not intertwined with an agreement containing an arbitration clause where plaintiffs' allegations against non-signatory defendants are not tied to any obligations or benefits received under the agreement); *Lismore v. Societe Generale Energy Corp.*, 2012 WL 3577833, at *7 (S.D.N.Y. Aug. 17, 2012) (finding that a signatory's claims are intertwined when the claims "arise from the 'subject matter' of the agreement with the arbitration clause"). Here, plaintiffs' claims against defendants arise out of, relate directly to, and rely on the terms of the Deed. The complaint alleges that section 12 of the Deed contemplates hiring an operator to manage the gaming assets and its sale, and that Laos hired defendants to serve as the operator for the specific purpose of fulfilling Laos' obligation "under Sections 12, 13, and 16 of the Deed." (D.I. 1 ¶¶ 18, 30) The complaint further alleges that defendants breached their fiduciary duties and breached the contract by failing to enforce or fulfill several provisions of the Deed (including sections 6, 9, and 13), and by failing to provide information demonstrating compliance with sections 15, 21, and 25 of the Deed. (*Id.* at ¶¶ 38-40, 49-59, 69-80) In fact, there are very few paragraphs of the complaint that do not reference or quote the Deed. Considering all of the foregoing, the court finds that plaintiffs' claims against defendants are intertwined with the Deed.

A non-party signatory and non-signatory defendant share a close relationship sufficient to compel arbitration of plaintiffs' claims by estoppel "in cases involving

subsidiaries, affiliates, agents, and other related business entities." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008). "Where the parties to [an arbitration] clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993). The complaint alleges that defendants are "agents" of Laos, and the allegations in the complaint describe an agency relationship. (D.I. 1 ¶ 33) Accordingly, the defendants have a sufficiently close relationship to Laos that they may enforce the arbitration clause in the Deed against plaintiffs, because all of the claims in the complaint are intertwined with the Deed.

Plaintiffs argue that they cannot be required to arbitrate under the Deed by selectively quoting from the Second Circuit's decision in *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2007). (D.I. 22 at 8) Specifically, plaintiffs claim that they did not consent to defendants being retained as the operator and, under *Sokol*, estoppel does not apply unless defendants "'were, or would predictably become, with Plaintiffs' knowledge and consent, affiliated or associated with [Laos] in such manner as to make it unfair' to not require Plaintiffs to arbitrate their claims pursuant to the Deed." (D.I. 22 at 2; *Id.* at 8 (internal punctuation omitted) (quoting *Sokol*, 542 F.3d at 361)). Plaintiffs are equating any contractual right they may have under the Deed to expressly consent to the appointment of the operator with the underlying concept of consent as applied in cases enforcing arbitration agreements. But the doctrine of arbitration by estoppel developed under the rationale that although "arbitration remains a matter of consent," that "consent can be implied." *Gov. Emp. Ins. Co. v. Grand Med. Supply, Inc.*,

2012 WL 2577577, at *4 (E.D.N.Y. July 4, 2012); *Sokol*, 542 F.3d at 361-62 (explaining that cases applying arbitration by estoppel are "consistent with the black letter rule" that arbitration requires consent, but "simply extends its contours somewhat by establishing that consent need not always be expressed in a formal contract"). *Sokol* provides that consent is implied when defendants "have a relationship with a signatory to the agreement that is sufficiently close to support the conclusion that either (a) the [plaintiffs] effectively consented to extend its agreement to arbitrate to the [defendants]; or (b) it would be inequitable to allow the [plaintiffs] to avoid arbitration with the [defendants]." *Grand Med. Supply*, 2012 WL 2577577, at *4 (citing *Sokol*, 542 F.3d at 361-62). Accordingly, the court does not read *Sokol* as requiring express consent, only the appropriate type of close relationship.

The court's conclusion is reinforced by several other aspects of the *Sokol* opinion, its progeny, and other cases by the Second Circuit addressing arbitration by estoppel. First, the quote on which plaintiffs rely comes from the court's summary of its observations of other cases addressing arbitration by estoppel. In formulating a general rule to apply to the case before it, the *Sokol* court stated that "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Sokol Holdings*, 542 F.3d at 359. This is the rule that the Second Circuit has applied in subsequent cases, not the quote on which plaintiffs focus. *See, e.g., Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010). This is also the combination of words closest in meaning to the Second Circuit's other

formulation of the rule for arbitration by estoppel, which states that there must be a "close relationship." *See, e.g., MAG Portfolio Consultant*, 268 F.3d at 62. Second, plaintiffs cite no case where the court found intertwined issues and a corporate affiliation, such as an agency relationship, but denied arbitration by estoppel because plaintiffs did not affirmatively consent to the corporate affiliation. *Sokol* itself found that defendants had no relationship to the contract except as a third-party wrongdoer who tortiously interfered with plaintiffs' rights by wrongfully inducing the other signatory to breach that contract. *Sokol*, 542 F.3d at 362; *Ross v. Am. Exp. Co.*, 547 F.3d 137, 145 (2d Cir. 2008) (explaining its decision in *Sokol*); *Winter Investors, LLC v. Panzer*, 2015 WL 5052563, at *10 (S.D.N.Y. Aug. 27, 2015) (denying arbitration by estoppel where the only relationship the non-signatory defendant had to the contract was as a third-party wrongdoer who tortiously interfered with plaintiffs' rights under that contract). Here, plaintiffs do not allege defendants tortiously interfered with their rights under the Deed. For all of these reasons, the court finds plaintiffs' reliance on *Sokol* misplaced.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (D.I. 12) is granted. Defendants' motion to stay discovery pending disposition of defendants' motion to dismiss (D.I. 17) is denied as moot. Defendants' motion to strike the declarations of John K. Baldwin and Deborah Deitsch-Perez (D.I. 26) is denied as moot. An appropriate order shall issue.